BOUCHER v. BOUCHER

1. DIVORCE—FINAL JUDGMENT—PROPERTY SETTLEMENT—ALTERATION
—MODIFICATION—JURISDICTION.

   A property settlement provision in a final divorce judgment,
   whether it provides for the transfer of property or payment
   of money in a lump sum or in installments, is final, and a court
   has no jurisdiction to alter or modify the property settlement
   in the absence of fraud, duress, or mutual mistake; the cause
   does not continue after final judgment and may not be modi-
   fied as the circumstances of parties change or if the obligor
   under the settlement defaults in mortgage payments.

2. DIVORCE—PROPERTY SETTLEMENT—CLARIFICATION—JURISDICTION.

   The court has jurisdiction to clarify, construe, or implement a
   property settlement in a final divorce judgment as long as it
   effects no change in the substantive rights of the parties.

3. DIVORCE—FINAL JUDGMENT—PROPERTY SETTLEMENT—RELIEF FROM
   JUDGMENT—JURISDICTION.

   The court has jurisdiction to give parties to a property settle-
   ment in a final judgment of divorce relief from that judgment
   upon proper motion if the grounds for such relief, as specified
   by court rule, are present (GCR 1963, 528.3).

4. DIVORCE — JUDGMENT — AMENDMENT — INSTALLMENT PAY-
   MENTS — ACCELERATION.

   Acceleration of installment payments not due for years to come
   under the property settlement provisions of a judgment of
   divorce changes substantive rights of the parties and is not
   within the authority of the trial court unless it comes within

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5–7]  24 Am Jur 2d, Divorce and Separation § 941.
[3]  24 Am Jur 2d, Divorce and Separation § 925.
[4]  24 Am Jur 2d, Divorce and Separation §§ 941, 942.
[8]  24 Am Jur 2d, Divorce and Separation § 942.
[9]  45 Am Jur, Receivers §§ 387, 389.

an exception to the general rule that a property settlement provision in a divorce judgment cannot be modified.

5. DIVORCE — JUDGMENT — AMENDMENT — PROPERTY SETTLEMENT — COURT RULES.

The fact that husband, defendant in a divorce action, shot and killed plaintiff wife and was convicted of murder is not, by itself, a reason justifying relief from the operation of the judgment of divorce within the meaning of the court rules so as to authorize acceleration of installment payments not yet due under the property settlement provisions of the judgment; the defendant need not be penalized by the civil law because the criminal law deals with his transgression (GCR 1963, 528.3[6]).

6. DIVORCE—JUDGMENT—PROPERTY SETTLEMENT—INSTALLMENT PAYMENTS—ACCELERATION.

Acceleration of installments due in the future under a property settlement in a final judgment of divorce was a modification and not merely a clarification of the judgment where there was no provision in the settlement for acceleration if the obligor defaulted on an installment or if the obligee died a natural death and where the ground for acceleration was the default of the obligor on installments due; the order did not merely construe or implement the judgment, it effected a change of the substantive rights of the parties.

7. DIVORCE—JUDGMENT—PROPERTY SETTLEMENT—CORRECTION.

An arithmetical error in the amount of and numbers of installments due under a property settlement in a final judgment of divorce may properly be corrected by court order subsequent to that final judgment.

8. RECEIVERS—DIVORCE—SUPPLEMENTARY PROCEEDINGS.

A court order appointing a receiver and stating that he is to take possession and charge of the real and personal assets of the defendant in a divorce action to hold them until further order of the court was authorized by statute (MCLA § 600.6104).

9. RECEIVERS—SALE OF ASSETS—TERMS OF COURT ORDER—TERMS OF SALE.

An order of the court granting a receiver a license to sell real property which does not mention personal property of the debtor located on the real property and the pursuant sale of the real property without mention of the personal property

in the instrument of sale leaves the scope of the sale in doubt and requires an evidentiary hearing to determine whether both the receiver and the buyer intended the sale to include personal property of the debtor.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 May 11, 1971, at Lansing. (Docket Nos. 7846, 7974.) Decided June 21, 1971.

A judgment of divorce was granted to Blanche M. Boucher against Daniel J. Boucher. Complaint by plaintiff's representative in supplementary proceedings to accelerate amounts due on future installments under the property settlement. Complaint by defendant for removal of personal property from real property sold by a receiver pursuant to court order. Order for acceleration of future installments under the property settlement and denying complaint for removal. Defendant appeals. Reversed as to order of acceleration and remanded for hearing on the denial of removal of personal property.

*Roderick K. Daane,* for plaintiff.

*Donald W. Grant,* for defendant.

*James H. Hudnut,* for receiver Ralph Becker.

Before: Danhof, P. J., and Fitzgerald and Quinn, JJ.

Fitzgerald, J. On March 11, 1968, Blanche M. Boucher was granted a divorce from Daniel J. Boucher. Mrs. Boucher was awarded custody of the couple's six-year-old son and support for him. She was not given any alimony but there was a substantial property settlement. The terms of the property settlement pertinent to this appeal state:

"It is further ordered and adjudged, that Daniel J. Boucher, shall pay the sum of two hundred and six thousand ($206,000) dollars to plaintiff, Blanche M. Boucher, as and for interest in the remainder of the marital assets of the parties hereto as follows:

"1. Fifty-seven thousand ($57,000) dollars, forty-six thousand ($46,000) dollars of which shall be paid within thirty (30) days from March 11, 1968, eleven thousand ($11,000) dollars, of said forty-six thousand ($46,000) dollars, shall apply to attorneys fees. The balance of $11,000 shall be paid by defendant on or before December 20, 1968.

"2. The balance of one hundred forty-nine thousand ($149,000) dollars, shall be paid in twenty (20) semi-annual payments, five thousand ($5,000) dollars each, commencing December 1, 1968.

"3. To secure the payment of said sum, Daniel J. Boucher, shall cause to be delivered a valid and subsisting second mortgage on the real property known commonly as 'The Buhl Estate' together with a corporate guarantee from Tudor Hills Country Club, Inc., a Michigan corporation and a pledge of the common shares held by Daniel J. Boucher in said corporation.

"4. To secure the payment of the sums provided to be paid in paragraph 1 above defendant shall convey a mortgage lien on all of the marital assets to plaintiff, regardless of present first or second liens and encumbrances. The condition of said mortgage shall be the payment of said sums. To secure the release of said mortgage plaintiff shall deposit in escrow (ready for delivery and recording) and authorizing the escrow agent to deliver any or all of said releases upon payment of said sums in full, or upon payment of seventy-five (75%) of all sums received from a sale or mortgage of any of said properties until said sums are paid in full."

Paragraph numbered 2 contains an obvious error

since 20 payments of $5,000 each equals $100,000, not $149,000.

The defendant defaulted on the judgment and on May 22, 1968, Ralph A. Becker was appointed receiver of all of the real and personal assets of the defendant to hold until further order of the court.

On September 16, 1968, the receiver petitioned the court for a license to sell "The Buhl Estate", and on October 16, 1968, an order authorizing the sale was signed. According to the appellee's brief, on the evening of October 16, 1968, Blanche M. Boucher died of gunshot wounds inflicted that evening by the defendant.

The defendant was arrested and charged with first-degree murder and has subsequently been convicted in Oakland County Circuit Court. An appeal of this conviction has been taken.

On December 5, 1968, the court ordered two deeds pertaining to "The Buhl Estate" set aside and title conveyed to the receiver. Plaintiff had alleged that the deeds dated March 20, 1967, and September 22, 1967, were fraudulent conveyances as against her as a judgment creditor and further that they were in violation of two temporary restraining orders. The sale by the receiver of "The Buhl Estate" on land contract for $650,000 was confirmed by a court order dated December 11, 1968.

In May, 1969, the plaintiff (now by her representative) in answer to a petition to terminate the receivership, asked the court for an order accelerating all balances due and owing under its judgment. On June 11, 1969, the court ordered the acceleration of the entire unpaid property settlement balance awarded by the March 11, 1968, divorce judgment, including installment payments due or to become due thereunder. A rehearing was denied July 10, 1969.

The defendant appealed from that order and also from one entered July 23, 1969, which denied the defendant's petition to remove personal property located at the Tudor Hills Estate (also known as The Buhl Estate).

This Court denied the appeals for failure to give bond, and because the final appealable judgment was the judgment of divorce and the post-judgment orders sought to be appealed were interlocutory and appealable only by leave, and the orders were supplementary proceedings which may be appealed to the Court of Appeals in the usual manner thereby being governed by GCR 1963, 518.2, since there are numerous multiple claims involved.

The Michigan Supreme Court granted leave to appeal and remanded the matter to this Court as upon leave granted.

The first issue is whether the trial court erred in accelerating the installment payments of the property settlement provisions of the divorce judgment.

The defendant argues that the trial court was without jurisdiction to modify the property settlement provisions of the divorce judgment absent fraud, duress, or mutual mistake, and the only ground relied upon by the plaintiff in her petition to accelerate the deferred installments of the $149,000 award was that defendant had failed to comply with the provisions of the property settlement. The trial court's reason was that to do anything else would be against equity and good conscience. The defendant contends those reasons are insufficient, citing *Ferrera* v. *Ferrera* (1969), 16 Mich App 661; *Keeney* v. *Keeney* (1965), 374 Mich 660; *Edgar* v. *Edgar* (1962), 366 Mich 580; *Stellwagen* v. *Stellwagen* (1936), 277 Mich 412; and *Kutchai* v. *Kutchai* (1926), 233 Mich 569.

The plaintiff argues that the court's action did not modify the judgment, but rather "clarified, construed, and implemented" its terms.   Plaintiff concedes that research has failed to disclose a case with facts such as exist in the present one, but cites *Walker* v. *Walker* (1950), 327 Mich 707; *Mitchell* v. *Mitchell* (1943), 307 Mich 366; and *Harbin* v. *Harbin* (1968), 12 Mich App 320, as authority that a court can clarify and construe a divorce decree even when it cannot amend it.

Alternatively, the plaintiff argues that if the acceleration order did constitute a modification then it was within the power of the court and was not an abuse of discretion, citing GCR 1963, 528.3(6).

According to 24 Am Jur 2d, Divorce and Separation, § 941, p 1075, if in settlement of property rights a decree provides for a lump sum, or payments in installments, or a transfer of property, it is generally held that the award is final and is not subject to modification as the circumstances of the parties change.

As stated in 2 Moore & Moore (2d ed), Michigan Practice, Marriage, Divorce, Separation, § 2042, p 131, a divorce judgment must be final with respect to the division of the parties' property, so a property judgment cannot provide for a modification in case the spouse defaults in mortgage payments.   Property rights of the parties based on the divorce or from the assignment of property after the final judgment is entered cannot be altered as the cause does not continue after that time.   Thus, the statutory provisions permitting modification of a divorce decree as to alimony and other allowances for the support of the wife and children do not apply to property settlements, including awards in lieu of dower.

The *Ferrera, Keeney, Edgar, Stellwagen,* and *Kutchai* cases, *supra,* cited by the defendant, do support his position that property settlements in divorce judgments are as final as any other judgments and can only be modified under those exceptional circumstances when any judgment can be modified, such as fraud.

The *Walker, Mitchell,* and *Harbin* cases, *supra,* cited by plaintiff, support the position that property settlements in divorce decrees can be clarified when it will make no change in the substantive rights of the parties.

However, none of the cases cited by plaintiff and defendant are close enough factually to the present case to be controlling.

Based on the case law, there would be no problem in the court's clarifying the obvious arithmetical error in paragraph numbered 2 of the property settlement provision, but to accelerate payments not due for years to come changes substantive rights of the parties and thus is not within the trial court's authority unless it comes within an exception to the general rule.

In addition to the case law, there is, as pointed out by the plaintiff, a pertinent court rule. GCR 1963, 528.3 reads:

"Mistakes; Inadvertence; Excusable Neglect; Newly discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under subrule 527.2; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or

other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment order or proceeding was entered or taken. A motion under subrule 528.3 does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in subrule 528.2 above, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

Fourteen months having elapsed between the divorce judgment and the request for acceleration reasons (1), (2), and (3) have no application. Additionally, the fraud, if any, was in attempting after the divorce to convey real estate in violation of the plaintiff's rights. There was no fraud relative to the amount of assets at the time the divorce was granted so it seems unlikely that a fraudulent attempt to convey subsequent to the divorce judgment would vitiate the property settlement.

The core question is whether this case comes within "any other reason justifying relief from the operation of the judgment" which is (6) of rule 528.3.

The fact that the defendant shot and was subsequently convicted of killing the plaintiff is certainly an extraordinary circumstance but does not call for penalizing the defendant under the civil law when the criminal law deals with such transgressions.

There was no provision in the judgment for acceleration of the installment payments if the defendant was in default or if the plaintiff died a natural death. Although this is apparently a case of first impression and certainly reasonable minds could differ, the scales weigh in the direction that the trial court exceeded its authority in ordering the acceleration of the installment payments not yet due.

A concomitant issue is whether the trial court erred in denying the defendant the right to remove personal property from the real estate sold by the receiver.

The defendant argues that since all of the documents relative to the sale of "The Buhl Estate" referred to real estate and did not mention personal property, the court erred in denying him authority to remove the personal property from it. He argues that the receiver's authority to sell is limited to that conferred upon him by statutes, rules, orders, or decrees of the court appointing him.

Plaintiff does not discuss this issue since it concerns the receiver and appellee is not a real party in interest as to the issue.

The receiver's petition for a license to sell only applied to real property and contained an appropriate legal description of the real estate. Attached to the petition was an offer from a buyer named Williams which spelled out on a realtor's form in considerable detail what personal property was not excepted from the transaction. That offer was not

accepted, but it is cited by way of contrast with the offer that was accepted. Under Williams' offer, this issue would probably not have arisen.

The receiver's order to sell real estate also gave a legal description of land plus the language "including the appurtenances, hereditaments, fixtures and equipment thereon". The bid which was accepted was from two attorneys, Sauer and Girard, and recited the language in the receiver's order to sell real estate. The order confirming the acceptance of that bid stated that it was "in accordance with the terms of said offer". The land contract actually entered into was on a standard "Burton Abstract" form and printed form language was left unaltered.

At a hearing on July 9, 1969, defense counsel argued for authority to remove personal property such as outboard motors, a house trailer, oriental rugs, television sets, furniture, etc. The trial court held that it was satisfied by Mr. Girard's statement that his offer to purchase did include personal property and the court stated that without taking testimony it would find that there was a meeting of the minds between Mr. Girard and the receiver that the purchase did include personal property.

The May 22, 1968, order appointing the receiver stated that the receiver was to take possession and charge of the real and personal assets of the defendant and to hold them until the further order of the court. Such action was authorized by MCLA § 600.6104 (Stat Ann 1962 Rev § 27A.6104).

Further, GCR 1963, 742.1, grants the receiver authority in such proceedings to convert the personal estate and effects into money without a special order of the court.

While it is not eminently clear that the legal documents show a conveyance of all of the personal property on the estate, the receiver apparently had the

authority to convey. The testimony of the receiver's attorney at the July 9, 1969, hearing is equivocal on the point of what was intended.

In this posture of events and documents, an evidentiary hearing on the matter appears called for. The trial court's finding that the Girard offer to purchase included personal property should be amplified with testimony as to whether there was a meeting of minds.

Reversed as to acceleration of the installment payments of the property settlement and remanded for an evidentiary hearing on the denial to defendant of the removal of personal property from the real estate.

We do not retain jurisdiction. Costs to abide outcome.

All concurred.